Petition of Harold L. SHERRILL and Patricia Sherrill, Petitioners,

v.

John Cecil BIGLER and Helen Elizabeth Bigler, Respondents.

No. 7434.

Springfield Court of Appeals.

Missouri.

March 12, 1955.

A. D. Moore, Springfield, for petitioners.

John R. Caslavka, Greenfield, for respondent.

PER CURIAM.

This is an original proceeding in habeas corpus by Harold L. Sherrill and Patricia Sherrill, the natural parents of a minor girl named Debra Sue, to obtain her custody.

The application states that the petitioners are the parents of Debra Sue Sherrill, a girl of the age of two years and ten months; that they surrendered possession and custody to defendants, John Cecil Big-

ler and Helen Elizabeth Bigler, and granted the privilege of caring for and attending said minor during the time petitioners were working in the state of Kansas; that in March, 1954, defendants moved from Kansas to Cedar County, Missouri, and petitioners consented that their minor child be taken to Missouri with the definite understanding that defendants were to surrender custody when requested.

It states that while said child was in the custody of defendants, petitioners visited her and paid defendants for her maintenance and care; that they demanded custody from defendants which has been refused.

Defendants' return pleads that they are husband and wife, tenant farmers living in Cedar County, Missouri; that they have custody of Debra Sue Sherrill by virtue of a court order made by the Juvenile Division of the Circuit Court of Cedar County, January 24, 1955.

It further pleads that petitioners relinquished all rights to care and custody of said child June 20, 1953; that they told defendants they could have the child and they did not want her and if they had ten others they could have all of them.

It pleads that defendants first met petitioners during the first two months of 1953 while living in the same apartment house in Wichita; that petitioners employed defendants to keep the child over week ends on two different occasions and paid them $5 each time; that they then gave defendants permanent custody of child and consented they bring her with them to Missouri. It pleads that petitioners have abandoned the child for a period of one whole year before the filing of this action; that they have contributed nothing to her support and evidence no interest in her welfare.

It pleads that defendants filed an action to adopt said child in the Circuit Court of Cedar County, Missouri, November 27, 1954; that the trial court, in a hearing on this petition, granted temporary custody of said minor to defendants.

The return pleads unfitness of petitioners to have the child because of immoral conduct.

The petitioners' reply is a general denial as to the court order granting custody; that if the Circuit Court of Cedar County made any order as to the custody of this child it was illegal and void under section 453.070 RSMo 1949, V.A.M.S., because no investigation of either the child or the fitness of defendants to have her was made prior to such order. It denied generally all other allegations in the return and prayed for custody under their application for writ of habeas corpus.

The evidence disclosed that petitioners were married in Arkansas, in June, 1948, and moved to Wichita, Kansas, to make their home. Both were employed. There was born to this marriage a girl named Debra Sue, now 2 years and 10 months old. The father is 25 years of age and the mother is 22.

Petitioners and defendants first met about February, 1953, when both families occupied an apartment in the same building in Wichita. Petitioners had marital difficulties and were separated for short periods three or four times, the last separation being in August, 1954, when Mrs. Sherrill sued her husband for divorce and custody of the minor child in Kansas. This difficulty, however, was settled and the evidence showed that since September, 1954, they have been living peaceably together in Wichita.

The evidence shows that petitioners kept their baby with Mrs. Sherrill's mother and with others while working; that they employed defendants to care for her on two weeks ends and paid them $5 each time; that later they agreed to permit defendants the right to care for the child and, in March, 1954, consented that defendants bring the child with them to Missouri where they lived on a rented farm in Cedar County. Petitioners testified that defendants were paid $15 per week for caring for said child while they remained in Wichita and $10 per week in Missouri.

Defendant, Mr. Bigler, testified that they were paid not in excess of $150 by petitioners during the time they had custody. Defendant denied that Mr. Sherrill had bought furniture for defendants and clothing for Mrs. Bigler but did admit they had bought some items of clothing for the child on different visits to see her. He testified that Mrs. Sherrill visited her child only three times in their home in Missouri; that Mr. Sherrill visited the child some six or eight times and stayed over with them on some week ends. He said that petitioners gave defendants full possession of the child; that they did not care for her and told him that if they had ten more they would give them to defendants; that permanent possession was given on the 19th or 20th of June, 1953; that at the time defendants left Kansas for Missouri he said Mrs. Sherrill said, "If you love her enough, to take her and raise her as your baby you can have her."

Defendant, Bigler, testified that when Mrs. Sherrill first came to the apartment in Kansas she was separated from her husband; that for about a month visitors, both men and women, came to her apartment, in both daytime and at night; that Mrs. Sherrill worked in a restaurant where they sold beer and was so working at the time they moved from Kansas. He testified that on one occasion when Mrs. Sherrill's husband came home a man jumped out the bathroom window.

He testified that Mr. Sherrill associated with other women; that he drank. He said they were good friends to the Sherrills while they lived in the apartment and at the time they left Kansas the Sherrills helped move them to Missouri; that defendants live on 120 acre rented farm and oversee 320 acres belonging to the county agent.

Defendant admitted that his wife had had clandestine relations with Mr. Sherrill, which started back in Kansas in 1953 and continued until September, 1954, when he ordered petitioners to stay away from his home. He admitted that he suspicioned Sherrill and his wife while in Kansas because Sherrill was always hanging around after her and he admitted that at one time in his home he complained of the conduct of his wife and Sherrill one morning when he came in from milking; that on one occasion he told his wife if she wanted to go with Sherrill he would give her $300. He admitted about knowing of correspondence carried on between Sherrill and his wife and he said that his wife, in September, 1954, confessed her relations with Sherrill voluntarily.

Twenty letters were introduced in evidence, written by defendant's wife to Sherrill. These letters show an immoral relationship between Mrs. Bigler, defendant, and Sherrill. In them she talks about having had adultery with Sherrill. She makes derogatory statements as to his wife and clearly shows her enmity for Mrs. Sherrill. The letters show not only the misconduct of Mrs. Bigler in her own home with Sherrill, but that she met him in Pittsburgh, Kansas, and was with him in a hotel room. The language used in these letters is so vulgar that the court refused to have them read in public.

Petitioner, Sherrill, testified that he started going with Mrs. Bigler while in the apartment in Kansas. He told of his intimate relationship with her in the apartment where she lived while her husband was at work and of acts of adultery committed both in Kansas and in defendants' home in Missouri and about their meeting in hotel rooms in Pittsburgh, Kansas. He testified that he bought them a television and bought Mrs. Bigler and the child clothes and that there never was any agreement that permanent care of the child was surrendered to the defendants. He stated he had been employed continuously, earning about $80 per week before deductions and that they lived in a two room apartment in Wichita; that he demanded custody of his child from defendants, which they refused. He testified he and his wife are living happily together at this time but admitted they had been separated on other occasions.

Mrs. Sherrill testified that she did not drink; that she had never surrendered custody of her child permanently; that they had paid defendants for keeping said child and that she was not now working and wanted the care and custody of her. She denied any immoral relations with anyone and stated she had worked in restaurants as a waitress but never in a tavern; that in one restaurant beer was sold. She stated they now lived in a two room apartment but intended to get a larger one when they regained custody of Debra Sue.

The records of the Juvenile Division of the Circuit Court of Cedar County were offered in evidence. They disclose that Harold L. Sherrill and wife filed a petition in habeas corpus to recover their daughter, Debra Sue, in October, 1953; that defendants, Cecil Bigler and wife, filed a return in said cause and that this action was pending in Cedar County until dismissed at the time the habeas corpus proceeding was filed in the instant case. The record shows that on December 6, 1953, the Biglers filed an adoption petition in Cedar County and that without any investigation of the fitness of petitioners to adopt Debra Sue or as to the adoptability of the child, the trial court ordered that temporary custody be placed in the hands of defendants on January 24, 1955. The adoption suit is now pending.

█ We are first met with a motion to quash the writ because it was improperly ordered by a judge of the Court of Appeals in chambers and not signed by him, because the writ was not sufficient and was not properly served and because the Court of Appeals has no jurisdiction.

An examination of our records shows that the writ was properly issued by this court, properly served and that the return thereon is sufficient. We hold that this court has jurisdiction to determine the issue of custody of the minor child involved and there is no merit in the motion to quash. The motion is denied.

The first issue raised by the return and the reply thereto is that the Court of Appeals has no jurisdiction because of the judgment rendered by the Circuit Judge in the Juvenile Division of the Circuit Court of Cedar County in an adoption proceeding between the parties to this action wherein the court decreed that custody of Debra Sue Sherrill shall remain with defendants until further order of the court.

█ It was admitted by the evidence that the order of the Circuit Court transferring custody of Debra Sue to defendants, made January 24, 1955, in the pending adoption action, was made without compliance with the adoption laws, section 453.070 RSMo 1949, V.A.M.S., in that no investigation was made before such order as required by the statute. We hold this order of the Circuit Court to be void because it did not comply with the law.

This court, in no way, desires to interfere with the action in adoption now pending in the Circuit Court of Cedar County. Our only reason in passing upon the judgment made as to the custody of the child in question is to determine our jurisdiction in this action.

█ We call attention to another matter in relation to the courts' order of transfer of custody in the adoption action. The adoption suit was filed December 6, 1953. In October, 1953, the petitioners in the action at bar filed a petition in the Circuit Court of Cedar County in habeas corpus against the defendants herein seeking the custody of the minor child involved in the adoption action. The writ was by the court issued and served and return made thereon and the cause was pending for trial at the time of the alleged order in the adoption action. It is difficult to understand why the court would attempt to transfer custody in the adoption action and deprive himself of jurisdiction to try the habeas corpus action at the time pending in his court. The question of the custody of this minor child was exclusively in the Circuit Court of Cedar County by virtue of the writ of habeas corpus issued by the court and during the pendency of that action, no court could resolve that question until the habeas corpus proceeding had been terminated.

■ The next issue raised is that petitioners surrendered permanent custody of the child involved to defendants, June 20, 1953, and that they have wilfully abandoned said child.

The evidence in the case clearly shows that petitioners did not wilfully abandon the custody of their child. Even defendants' testimony shows that they helped support the child. Defendants stated that the contribution was not in excess of $150 but petitioners both testified they paid defendants $15 per week for the care of the child while in Kansas and $10 per week while in Missouri. Sherrill's testimony was undisputed that he gave defendants a television set and clothing. The evidence was disputed as to whether or not petitioners had not purchased furniture for defendants' home and purchased clothing for Mrs. Bigler. The testimony is undisputed that both of petitioners visited the baby, bought its clothing during the time she was with defendants and paid her hospital bills. The testimony wholly fails to show wilful abandonment.

■ It has long been the law in this state that parents are not bound by contract or gift of their children. The state is an interested party in the welfare of children. Our statutes provide that legal custody of a child can be secured only through an order of the Juvenile Court. There is no merit to the plea of a gift of this child.

■ The next question raised in this action is that petitioners are not fit persons to have the custody of their child.

In In re Cole, Mo.App., 274 S.W.2d 601, 608, decided January 18, 1955, by the St. Louis Court of Appeals, the law is stated:

"* * * Parents as the natural guardians of their minor children are presumed to be fit and qualified to assume the custody of their children and the natural right of the parent should never be denied unless it is made manifest to the court that he or she for some strong and cogent reason is unfit or incompetent to take charge of the children, or unless the welfare of the children themselves, for some special or extraordinary reason, demands a different disposition at the hands of the court. Cox v. Carapella, Mo.App., 246 S.W.2d 513. * * * Having raised the question of the fitness of petitioner to act as custodian as an affirmative defense, respondent had the burden of proof on the issue of fitness. Cox v. Carapella, supra; Williams v. Williams, 240 Mo.App. 336, 205 S.W.2d 949.''

Under this rule of law we hold that defendants have wholly failed to meet the burden of proof necessary to convict Mrs. Sherrill of unfitness to have the care and custody of her child. The evidence does disclose that Mr. Sherrill has been guilty of such immoral conduct as to deprive him of custody of this child and this court would so find if the care of the child was to be left to him, but, from the evidence, it is plain to the court that the mother will be in charge of the control and care of the child and we believe that its welfare will be best protected if left in her care.

We are further impressed from the evidence that if the custody of this child were granted to the defendants its happiness and welfare would be in the control of Mrs. Bigler whose conduct and immorality has been such that the court could not in good conscience entrust the welfare of this baby girl in her care. True, her husband seems to be a reputable citizen but their home is no place for the rearing of this child.

It is the order and judgment of this court that the care and custody of this child be returned to the petitioners and the cost of this proceeding be assessed against defendants.

STONE and RUARK, JJ., concur.