In the Matter of the Adoption of Mary SMITH, John Doe and Mary Doe, Petitioners.

No. 22801.

Kansas City Court of Appeals.

Missouri.

June 2, 1958.

Hugh B. Downey, Downey, Abrams & Sullivan, Kansas City, for petitioners.

Norman E. Greene, Warrick & Lamkin, Kansas City, amicus curiae.

MAUGHMER, Commissioner.

Appellants filed a petition to adopt and at the same time filed an application for legal custody of a minor child, age five years. The application for legal custody was dismissed "for want of jurisdiction" and petitioners have appealed. In this court appellants, joined by the guardian ad litem and amicus curiae, moved that the caption of this cause be changed from the true names of the parties to "In re the Adoption of Mary Smith, John Doe and Mary Doe, Petitioners". For good cause shown, such motion was granted and the caption changed accordingly. The issues presented by the appeal arise not from disputed facts, but rather as to the legal results which flow from the application of substantially uncontroverted facts.

Without reciting the details, it may be said that the minor child was born February 4, 1952, illegitimate, in Jackson County, Missouri, to a mother whose residence was in the State of Kansas. Under date of February 11, 1952, the mother executed and there was filed in the Juvenile Court of Jackson County a document styled: "Application for permission to waive necessity of consent to future adoption". This application set forth the names of the mother and child, date of birth, and alleged the child was at the time "in Jackson County, Missouri and within the jurisdiction of this court". Therein it was declared that because of the mother's circumstances she believed it would be for the best interest of the child for her "to waive the necessity of consent to a future adoption of said child", and requested that Saint Anthony's Home for Infants and Catholic Welfare Bureau, Inc., or either of them, be authorized to place the child for adoption. The application then recited that applicant subjects herself and said child to the jurisdiction of the court "for all purposes wherein the welfare of said child may be concerned, including the right of this court to determine from time to time the lawful and actual custody of said child pending its adoption". The prayer was "that she be permitted to waive the necessity of her consent to the future adoption of said child". The procedure as described in both the caption and prayer of the application is specifically provided for by Section 453.050, Par. 1, Adoption, V.A.M.S., 1949, which reads: "The juvenile court may, upon application,

if it appears wise, permit a parent of a child or the mother of a child born out of wedlock to waive the necessity of his or her consent to a future adoption of such child".

On February 25, 1952, the Juvenile Court considered the application, but heard not one scintilla of evidence and signed an order reading in part as follows: "Now, Therefore, be it ordered, adjudged and decreed that said parent be and she is hereby permitted to waive the necessity of her consent to a future adoption of her said child, and that the child may be placed for adoption by St. Anthony's Home for Infants and Catholic Welfare Bureau, Inc. (each a Missouri corporation), or either of them, and this Court hereby retains jurisdiction of said child for the purpose of determining and awarding from time to time the lawful and actual custody of said child pending its adoption, and for such other purposes as the welfare of said child may require". This order was not filed in the Juvenile Court until April 15, 1957, when the petitioners instituted their proceedings for adoption and for legal custody. Under date of October 3, 1953, nearly 20 months after the court's order, the mother executed a formal written waiver of consent to future adoption.

From the testimony of Sister Mary Pius, Director of Saint Anthony's Infants' Home, and Father Lawrence J. McNamara, Director of the Catholic Welfare Bureau, Inc., it appears that these two organizations, which apparently work together, immediately after the child's birth, or at least immediately after the Juvenile Court order, took actual custody and supervisory control of the infant. On or about March 25, 1952, the child was by these organizations placed in the home of and in the actual custody of petitioners, where she has been ever since with the agencies' continuing supervision. Petitioners at all times herein mentioned and for many years before were residents of and lived within the State of Kansas.

On April 15, 1957, petitioners filed in the Circuit Court of Jackson County, Missouri, Juvenile Division, a pleading in two parts. One was a petition to adopt and change the name of the minor child. The other was an application for an order granting to them the "lawful and actual custody of said child". The Court heard testimony, took the matter under advisement and on December 9, 1957, dismissed the application for legal custody for want of jurisdiction, finding that "There is not sufficient competent evidence to show that this Court has jurisdiction under Section 453.010 RSMo 1949 [V.A.M.S.]". A motion to set aside and grant a new trial was denied, and petitioners have duly appealed.

■ Although adoption was known and recognized under many ancient legal systems it was unknown under our common law. Menees v. Cowgill, Mo.App., 214 S. W.2d 561; In re Perkins, 234 Mo.App. 716, 117 S.W.2d 686. Our adoption statutes constitute a complete code and the various sections thereof should be construed together. In re Adoption of Sypolt, 361 Mo. 958, 237 S.W.2d 193; In re McAvoy's Adoption, 237 Mo.App. 1099, 173 S.W.2d 108.

■ Section 453.010, Par. 1. Adoption, V.A.M.S., 1949, provides: "Any person desiring to adopt another person as his child may petition the juvenile division of the circuit court of the county *in which the person seeking to adopt resides, or in which the person sought to be adopted may be,* for permission to adopt such person as his child". (Italics ours). It is completely evident that the petition to adopt and the application to grant legal custody were not filed "in the county in which petitioners reside".

Section 453.110 reads: "1. No person, agency, organization or institution shall surrender custody of a minor child, or transfer the custody of such a child to another * * * without first having filed a petition before the circuit court sitting as a juvenile court of the county where the child may be, praying that such surrender or transfer may be made, and having ob-

tained such an order from such court approving or ordering transfer of custody.

"2. This section shall not be construed to prohibit the placing of a child in a family home for care by any parent, agency, or organization or institution, if the right to supervise the care of the child and to resume custody thereof is retained".

We are not here concerned with the situation that would arise where the Juvenile Court finds a child to be "neglected" or "delinquent" and makes him a ward of the Court. This child was never adjudged to be "neglected" or "delinquent" and was never made a ward of the Court. In determining this appeal, therefore, we consider only our adoption laws.

■ Petitioners say first that complete and continuing jurisdiction for adoption and transfer of legal custody was conferred on the Juvenile Court of Jackson County by the act of the natural mother in proceeding under Section 453.050 and obtaining permission to waive her consent to a future adoption. We do not agree. If a natural mother executes a proper waiver and consent for adoption or obtains the court's permission to waive consent to a future adoption as was done here, such acts, or either of them, merely eliminate the requirement that she be notified of the adoption proceeding. Section 453.060, V.A.M.S., 1949. Such action, with or without court authorization, is not, standing alone, an actual commencement of adoption proceedings. It merely dispenses with the necessity of serving the mother with a summons and copy of the petition, if and when an adoption petition is filed. Such procedure serves a salutary purpose in that it lessens the likelihood of the mother being able to identify the adoptors and the adoptors learning the name of the mother.

Petitioners' second point it that at the time the petition was filed "The child sought to be adopted was a resident of Jackson County, Missouri for the purpose of adoption". In the brief filed amicus curiae, exactly the opposite contention is made, namely, that at such time the child was not a resident of Jackson County. Both parties are expressing their conclusions as to the proper construction of Sections 453.010 and 453.110, supra, although these sections no longer refer to the child's "residence". Prior to 1947, the adoption law provided that adoption proceedings were to be filed in the county where the adoptee *resides, but* in 1947, the law was changed in this specific particular.

An article titled "The New Adoption Act" appearing in Volume 4, No. 9, Journal of the Missouri Bar, explains the change: "Section 9608 of the old law provided that petitions for adoption were to be filed in the county 'in which the person sought to be adopted resides, or if such person has no place of abode in this state, of the county in which the person seeking to adopt resides'. This section posed a troublesome question for lawyers concerning the establishment of legal residence of the minor to be adopted.

"The petition for adoption under the new law must be filed either in the county in which the petitioner or petitioners reside or in which the person sought to be adopted may be. Residence of the person sought to be adopted is no longer the controlling factor.

"Although there is some question as to whether this statute is a venue statute or one fixing jurisdiction, the Supreme Court in Banc apparently thought it jurisdictional. (In re Duren [355 Mo. 1222], 200 S.W.2d 343 [170 A.L.R. 391] (1947) although citing as authority Ex parte Fichtel [Neiter v. Houser], 229 Mo.App. 847, 84 S.W.2d 977 (Spr.--1935), which in effect treated the statute as one fixing venue)."

In Ex parte Fichtel, 229 Mo.App. 847, 84 S.W.2d 977, the court under the old law ruled a decree of adoption as valid where granted in Crawford County even though

the mother was a resident of St. Louis, where she had consented to the adoption and had placed the child in the actual custody of the adoptive parents who were residents of Crawford County. The holding here was that the child was a resident of Crawford County.

Judge Ellison in the case of In re Duren, 355 Mo. 1222, 200 S.W.2d 343, 170 A.L.R. 391, speaking for our Supreme Court en banc, reviewed many authorities and interpreted the then existing provision of our adoptive law requiring suits for adoption to be brought in the county where the adoptee resides (Sec. 9608, R.S.Mo.,1939). In this opinion the Court treated the residence provision as a jurisdictional requirement and then gave a liberal interpretation of the meaning of "residence". We incorporate two quotations from that opinion: On page 350 of 200 S.W.2d: "There is considerable authority to the effect that if a statute requires an adoption suit to be brought in the county of the adoptee's residence, it is a condition precedent to a valid adoption. (citing cases). But as to what constitutes 'residence', the decisions are not in accord". On pages 349–350 of 200 S.W. 2d: "The words 'residence', 'place of abode' and 'domicile' have many meanings in different connections (listing authorities) as in the laws governing administration, attachment, divorce, insurance, right of suffrage, taxation, etc. While all three expressions have sometimes been said to be synonymous, yet etymologically the word 'residence' is probably the weakest and most general of all. It means the place where one resides, or sits down or settles himself, and is largely a matter of intention not involving dominion over the particular spot or domicile. Nevertheless it ordinarily implies something of permanence or continuity at least for an indefinite period, to the exclusion of another contemporaneous residence".

In the case of In re Adoption of Sypolt, supra [361 Mo. 958, 237 S.W.2d 195], our Supreme Court, speaking of the present law, said: "Section 453.110 prohibits the transfer of custody or the acceptance of the custody of a child by any person, agency, or organization without first having filed a petition before the Juvenile Court 'of the county where the child *may be* * * *' (Italics supplied). * * * The county where the child 'may be' undoubtedly means the county where the child is resident at the time". Paragraph 2 of Section 453.110 then specifically permits placing a child in a family home for care without the order transferring legal custody.

However liberal our courts may have been in construing the word "residence" in the act before 1947, or however liberal we ought to be in construing the phrase "in which the person sought to be adopted may be" in the act after 1947, it must, we think, include more than mere entry into the county for the sole purpose of invoking jurisdiction. Our Supreme Court at least indirectly so indicated in the case of In re Mayernik, 292 S.W.2d 562, loc. cit. 570–571 by this statement: "Here, we have no case where a child, in circumvention of the jurisdiction of a court of a sister state, fraudulently has been brought within our state to invoke the jurisdiction of our courts".

Even under the broad inclusion given to the word "residence" by Judge Ellison in the Duren case, supra, it would appear that in our case where a mother, residing in Kansas, came to Kansas City for the birth of her baby, some question might arise after the birth as to whether or not the child was a resident of Jackson County, but there could be no question but that the child was located in Jackson County. We believe this was one of the situations the Legislature had in mind when, in 1947, it changed the wording in Sections 453.010 and 453.110 from "resides" to where "the person sought to be adopted may be" or "where the child may be". We do not believe our Legislature intended that the act of bringing a

child into one of our Missouri counties for the sole purpose of invoking jurisdiction for adoption would thereby confer jurisdiction. If this were true, then residents of Illinois or of Hannibal, Missouri, could take a child of which they had actual custody, and on a vacation trip to Colorado, or on a family migration to California, stop off in Jackson County and effectuate a lawful adoption of the child. Such an interpretation of the statute would, we think, be unreasonable. It would necessitate the Jackson County court having the required investigations of the parties made in areas hundreds of miles distant. It would cause additional expense and would open the doors of our courts for the determination of issues which arose far away and which could and ought to be there settled. In many instances, after the adoptive parents are deceased and the child has become an adult, it is necessary for the adoptee to determine if he had ever actually been adopted and if so where, and to secure a copy of the decree. If such adoption could legally have been granted in any county through which he might sometime have passed, his search might be almost endless. However, he would certainly inquire in the county of his birth. We do not believe our Legislature intended that such construction should be placed upon the phrase "in the county in which the person sought to be adopted may be". We do not believe that the act of petitioners in bringing the child into Jackson County at the time of filing their petition or at the time of the hearing thereon, from its home in Kansas where, for five years it had been in the actual custody of petitioners, amounted to compliance with the jurisdictional requirements of Section 453.-010 or of Section 453.110.

In 2 C.J.S. Adoption of Children § 35, page 416, we find this comment: "In view of the fact that adoption statutes are in derogation of the common law, and that courts vested with the power to hear and determine adoption proceedings, in so acting, are courts of limited jurisdiction, a statute re-quiring the residence of the parties within the jurisdiction of the court granting the adoption is mandatory, and an appearance by nonresident parties before the court is not sufficient to give it jurisdiction".

Now, from what we have already said, it follows that in our opinion, on February 25, 1952, the Juvenile Court of Jackson County was jurisdictionally authorized to adjudicate custody and adoptive proceedings respecting this child. If there had been an adjudication that the child was "neglected", under the meaning of Chapter 211, V.A. M.S., 1949, and the Court had made the child a ward of the Court, then jurisdiction to make future disposition of the child and to grant a decree of adoption would have continued to rest with such Court. See In re Hyman's Adoption, Mo.App., 297 S.W.2d 1, and In re Adoption of Sypolt, supra. If, on February 25, 1952, or while the child remained in Jackson County, petitioners had filed their petition to adopt and application for legal custody, then we believe jurisdiction and venue would have been lodged in the Circuit Court of Jackson County. Properly then, the Court should have acted on the application for legal custody and continued final hearing on the adoption until the minor, as provided by Section 453.080, V.A.M.S., 1949, "has been in the lawful and actual custody of petitioner or petitioners for a period of at least nine months * * *". In the case of In re Davis' Adoption, Mo.App., 285 S.W.2d 35, the child, born out of wedlock, was left by its mother with petitioners and she consented to their adoption of it. The petitioners filed for adoption. The trial court dismissed the suit on the ground that petitioners had not met the prerequisite of nine months' legal custody. The St. Louis Court of Appeals ruled that the natural mother could not transfer legal custody, saying on page 37 of 285 S.W.2d: "It appears quite obvious that it was the intention of the Legislature to lay down a rule whereby the custody of a child could not be transferred at the will or whim of an individual in charge of it, but,

on the contrary, a transfer of custody of a child must have the sanction of a court given by an order approving such transfer". The opinion then holds that the court should first determine if petitioners are entitled to legal custody and if they are, grant it to them and then hold the adoption in abeyance for nine months. The Springfield Court of Appeals said the same thing in Sherrill v. Bigler, 276 S.W.2d 473, loc. cit. 477: "It has long been the law in this state that parents are not bound by contract or gift of their children. The state is an interested party in the welfare of children. Our statutes provide that legal custody of a child can be secured only through an order of the Juvenile Court".

■, Section 453.070, Adoption, V.A. M.S., 1949, provides: "No decree for the adoption of a minor child shall be entered nor shall transfer of custody of such a child to the petitioner or petitioners in such adoption petition be ordered by the juvenile court having jurisdiction, until a full investigation has been made of the physical and mental conditions and antecedents of such child for the purpose of ascertaining whether the child is suitable for adoption and of the suitability of the petitioner or petitioners as parents for the child". In Sherrill v. Bigler, supra, 276 S.W.2d loc. cit. 476, the Springfield Court of Appeals held that a transfer of such custody without such investigation was void. Aside from approving the mother's request to waive consent the order of February 25, 1952, only gave its blessing to the agencies' contemplated efforts to find a foster home. The act placing the child in petitioners' home falls under Paragraph 2, and not Paragraph 1 of Section 453.110.

Concluding, we believe, first of all, that the Juvenile Court order of February 25, 1952, was nothing more than a permission to waive the necessity of consent to future adoption. Such was the style of the application and its prayer sought nothing further. But petitioners say that in the body of the application the mother subjects herself and the child to the jurisdiction of the Court for adoptive and custody purposes and the Court, by its order, accepted such future and continuing jurisdiction. It is surely fundamental and basic that the jurisdiction of any court to do any act is determined by its jurisdiction at the time its judicial process is invoked to do such act. It cannot be expanded through a mere expression of intention to retain jurisdiction. The child was not adjudged to be neglected, was not made a ward of the Court, an award of legal custody was neither requested nor granted, nor was any petition for adoption filed. Neither of these orders, such as would first invoke and then invest the Court with jurisdiction could properly be made without first hearing evidence, and lawful custody may not be granted to prospective adoptive parents without a prior investigation as to theirs and the child's suitability for adoption. No investigation was made, no testimony was heard, and no evidence was received. Until April 15, 1957, when petitioners filed their petition for adoption and application for legal custody, the Juvenile Court of Jackson County had nothing whatever to do with the matter except to approve the natural mother's request that she be permitted to waive the necessity of her consent to a future adoption.

It should be clearly understood that we are here reviewing the action of a trial court in dismissing an application for legal custody as a preliminary to adoption, for want of jurisdiction and in effect dismissing the petition for adoption for the same reason, rather than reviewing a collateral attack upon a decree of adoption which has already been granted and become final under a similar state of facts. Under the latter, the decree having been issued by a court of general jurisdiction, an appellate court would indulge the presumption even of jurisdiction, unless lack of jurisdiction affirm-

atively appeared from the record. In support of this view we quote the following from Am.Jur. Adoption of Children, Vol. 1, Page 636: "The general rule regarding proceedings before a court of general jurisdiction is that performance of all steps essential to the jurisdiction of the court is presumed in the absence of a contrary showing, even though the record is silent as to such facts". Page 676: "If in the particular jurisdiction the adoption decree is given a standing of the judgment of a court of general jurisdiction, then the lack of jurisdiction must appear from the record before it is subject to collateral attack".

The order of February 25, 1952, did not vest complete and continuing jurisdiction as to this child. The trial court was right in concluding that its jurisdiction under these facts was dependent upon whether there was compliance with the jurisdiction and venue provisions of Section 453.010 and Section 453.110 at the time petitioners' pleadings were filed. On that date petitioners were residents of Kansas and the child had been in their home for five years. Petitioners were not residents of Jackson County, or even of the State of Missouri. The child was not located or temporarily residing in Jackson County, or even in Missouri.

It follows, therefore, that the judgment of the Court in dismissing appellants' application for award of legal custody and in effect denying jurisdiction in the accompanying adoption proceeding must be and is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.