

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION ONE</u>

| | | |
|---|---|---|
| S.S.S., L.W.V. & M.T.S-V., | ) | ED104249 |
| | ) | |
| Respondents, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| v. | ) | 1422-JU00675 |
| | ) | |
| C.V.S., | ) | Honorable David C. Mason |
| | ) | |
| Appellant. | ) | Filed:  January 31, 2017 |

Biological father, C.V.S. ("Father"), appeals from a decree of adoption in favor of biological mother, M.T.S.-V. ("Mother") and her husband, L.W.V. ("Step-Father").  We reverse and remand with instructions.

## BACKGROUND

In 2007, Mother and Father,[1] both approximately 18 years-old, began a romantic relationship while residing in the State of California.  In April 2009, as a result of this relationship, S.S.S. ("Daughter") was born.  At her birth, Father was identified on Daughter's birth certificate as her father.

---

[1] Mother and Father never wed, and neither Mother nor Father ever sought a child custody order nor a child support order on Daughter's behalf.

In approximately February 2010, Mother terminated her romantic relationship with Father and immediately relocated with Daughter to St. Louis, nearly 1700 miles east, where they continue to reside. Father remained in California and currently resides near the Los Angeles Metropolitan Area.

Mother married Step-Father in December 2013. Mother, Daughter, and Step-Father began and continue to live together as a family unit. Then, on December 23, 2014, Mother and Step-Father filed a Petition for Termination of Parental Rights and for Adoption ("Petition") in the Circuit Court of the City of St. Louis. The Petition alleged Father had willfully abandoned and willfully neglected Daughter for a period of at least six months prior to the filing of the Petition, pursuant to Chapter 453. Father denied the same.[2]

The uncontroverted evidence presented at trial reflects that in the six months prior to December 23, 2014, Father traveled from California to St. Louis, three or four different times, to visit with Daughter. During each weekend-long trip to St. Louis, Father visited with Daughter between three and five hours each day. Mother required Father's visits with Daughter be closely supervised in a public location. Moreover, over the course of the same six-month period, it was not disputed that Father called Daughter on the telephone at least three times a week. Additionally, Mother testified that Father loves Daughter, and Daughter loves Father.

Likewise, the evidence adduced during trial revealed Father, personally or through his mother ("Grandmother"), provided financial support to Mother for their Daughter. From June 23, 2014 to December 23, 2014, Mother received *at least* $1600 in financial support from Father

---

[2] In December 2015, a few days before trial, Father filed a Petition for Paternity. As a result of the trial court's disposition in this adoption matter, public records indicate Father's Petition for Paternity was dismissed with prejudice on April 28, 2016.

or Grandmother. Several times throughout her testimony, Mother characterizes this financial support as child support.

After the filing of the Petition, an investigation as to the suitability of the adoptive home was conducted and a guardian *ad litem* ("GAL") was appointed. Both recommended the proposed adoption would serve Daughter's *best interest*. Ultimately, the trial court concurred and found, *inter alia*, Father had both willfully abandoned and willfully neglected Daughter for a period of at least six months immediately prior to the filing of the Petition and found it was in the best interest of Daughter the adoption be approved ("Judgment").

Father now appeals. Additional facts will be provided as needed throughout our analysis of the points presented by Father's appeal.

## DISCUSSION

Father advances two points on appeal. In both points, Father contends the trial court erred in terminating Father's parental rights because there existed no substantial evidence to support the Judgment and the Judgment was against the evidence.[3]

Specifically, in his first point on appeal, Father maintains Mother and Step-Father failed to prove by clear, cogent, and convincing evidence Father willfully abandoned Daughter for a period of at least six months prior to the filing of the Petition. Similarly, in his second point on appeal, Father avers Mother and Step-Father failed to prove by clear, cogent, and convincing evidence Father willfully neglected Daughter for a period of at least six months prior to the filing of the Petition. We agree.

---

[3] "[A] substantial-evidence challenge, a misapplication-of-law challenge, and an against-the-weight-of-the-evidence challenge . . . are distinct claims[, and] must appear in separate points relied on in the appellant's brief to be preserved for appellate review." Ivie v. Smith, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014) (internal quotations and citations omitted). In this regard, both of Father's points on appeal violate Rule 84.04(d). See Rule 84.04(d). The constitutional implications herein, compel this court excuse this deficiency.

### Standard of Review

This court reviews the judgment of the trial court under the standard of review applicable to any other court-tried case. The judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). We will defer to the trial court's determination of credibility, and we review the evidence and permissible inferences in the light most favorable to the trial court's judgment. G.E.R. v. B.R., 441 S.W.3d 190, 195 (Mo. App. W.D. 2014). "The judgment will be reversed only if this court is left with a firm belief that the order is wrong." Id.

### Analysis

This court is cognizant of our limited scope of review; however, our confidence in the trial court's Judgment is gravely diminished because in adjudicating this matter, the trial court elected to adopt, **verbatim**, the Proposed Findings of Fact and Conclusions of Law submitted by Mother and Step-Father. In re K.A.W., 133 S.W.3d 1, 12 (Mo. banc 2004) ("[W]hen reviewing a trial court's termination of parental rights, appellate courts must examine the trial court's findings of fact and conclusions of law closely.").

This practice may not be erroneous, *per se*, but our appellate courts have repeatedly chastised our trial courts for adopting, verbatim, proposed judgments. Neal v. Neal, 281 S.W.3d 330, 337 (Mo. App. E.D. 2009). "[W]hen a court adopts in its entirety the proposed findings of fact and conclusions of law of one of the parties, there may be a problem with the appearance . . . [because t]he judiciary is not and should not be a rubber-stamp for anyone." State v. Griffin, 848 S.W.2d 464, 471 (Mo. banc 1993); see also Brinkley v. Brinkley, 725 S.W.2d 910, 911 n.2 (Mo.

4

App. E.D. 1987) ("Even the most conscientious advocate cannot reasonably be expected to prepare a document which would reflect precisely the trial court's view of the evidence.").

Notwithstanding these grave concerns, we heed our standard of review and afford the Judgment of the trial court the requisite deference. The Judgment of the trial court explicitly found the testimony and evidence of Father not to be credible and the testimonies and evidence of Mother and Step-Father to be credible. Thus, this court grants all reasonable inferences in favor of the Judgment. In re Adoption of K.L.G., 639 S.W.2d 619, 623 (Mo. App. S.D. 1982) ("[T]his court must give due regard to the opportunity of the trial court to judge the credibility of the witnesses . . . and to reject the testimony of any witness.").

However, even given this level of deference, Mother and Step-Father still failed to satisfy their burden of proving Father either abandoned or neglected Daughter by clear, convincing, and cogent evidence. The trial court's Judgment appears to rely extensively upon Father's unflattering conduct and inadequate parenting between the time of Daughter's birth and approximately three years prior to the filing of the Petition. Although such evidence may be relevant, "[t]he greatest weight must be given to the conduct during the statutory period." In re H.N.S., 342 S.W.3d 344, 350 (Mo. App. S.D. 2011). The trial court erred in failing to focus on Father's conduct in the six-month statutory timeframe, rather than the first three years of Daughter's six years of life. In granting Mother's and Step-Father's Petition the trial court premised its entire Judgment on findings in the child's best interest without sufficient findings of willful abandonment or neglect in the six months prior to filing, as required by Chapter 453.

### *Adoption Statutes*

The subject of adoption, with the rights and obligations springing therefrom, is purely a creature of statute, unknown under our common law. Matter of Adoption of E.N.C., 458 S.W.3d

5

387, 404 (Mo. App. E.D. 2014). Codified under Chapter 453, Missouri's contemporary adoption statutes "constitute a complete code" unto themselves. In re Adoption of Smith, 314 S.W.2d 464, 466 (Mo. App. 1958); see, generally, Section 453.005, *et seq*.

Generally, when interpreting Chapter 453, the various sections thereof shall be construed together. In re Adoption of Smith, 314 S.W.2d at 466. However, the application of our adoptions statutes often engenders competing or conflicting interests. In re Perkins, 117 S.W.2d 686, 691 (Mo. App. 1938).

On one hand, our adoption statutes must be "strictly construed in favor of natural parents." Matter of A.L.H., 906 S.W.2d 373, 375 (Mo. App. E.D. 1995). "[T]he interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this [Supreme] Court [of the United States]." Troxel v. Granville, 530 U.S. 57, 65 (2000). Denying a parent his or her right to their child is an "awesome power" that should not be exercised lightly. In re T.A.L., 328 S.W.3d 238, 246 (Mo. App. W.D. 2010); C.B.L. v. K.E.L., 937 S.W.2d 734, 737 (Mo. App. E.D. 1996) ("The termination of parental rights is one of the most serious acts that a court can undertake."). Judge Richard B. Teitelman succinctly stated, "[t]he fundamental liberty interest of natural parents in raising their children does not evaporate simply because they have not been model parents or have lost temporary custody of their children to the State." In re K.A.W., 133 S.W.3d at 12.

On the other hand, our adoption statutes shall be "liberally construed with a view to promoting the best interests of the child[.]" In re Adoption of C.M.B.R., 332 S.W.3d at 807 (citations omitted); see also Section 453.005.1 ("The provisions of sections 453.005 to 453.400 shall be construed so as to promote the best interests and welfare of the child in recognition of the entitlement of the child to a permanent and stable home."). In all adoption proceedings, the

6

"paramount concern" is that of the best interest of the child. In re Marriage of A.S.A., 931 S.W.2d 218, 221 (Mo. App. S.D. 1996).

Accordingly, when confronted with a contested[4] proceeding commenced under Chapter 453, a court's deft search for the best interest of the child must not "unreasonably" abridge or erode "[t]he rights of the natural parent to the children[.]" In re E.C.N., 517 S.W.2d 709, 712 (Mo. App. 1974); see also In re Adoption of C.M.B.R., 332 S.W.3d at 807 ("[Chapter 453] is to be liberally construed with a view to promoting the best interests of the child, but such liberal construction is obviously not to be extended to the question of when the natural parents may be divested of their rights to the end that all legal relationship between them and their child shall cease[.]") (internal citations and quotation marks omitted). "A long history of Missouri cases involving the custody of children has held that there is a presumption that it is in the best interest of a child to be in the custody of his parents." Matter of Adoption of Fuller, 544 S.W.2d 345, 348 (Mo. App. 1976).

Thus, each adoption must be adjudicated upon its own unique set of facts. Matter of A.L.H., 906 S.W.2d at 375-76. "[R]eference to other abandonment and neglect cases may provide some helpful guidance in reaching a decision, [but] the very nature of these proceedings is such that each case must turn on its own unique set of facts." Id.

### *The Burden of Proof: Clear, Cogent, and Convincing Evidence*

Under Missouri's statutory construct, a prerequisite to any adoption is the consent of the natural parents or the involuntary termination of their parental rights. Matter of J.F.K., 853

---

[4] A "contested" adoption, pursuant to Chapter 453, is most appropriately defined as those circumstances where one or both biological parents decline to consent or object to the adoption. See Section 453.030.3; In re Adoption of N.L.B. v. Lentz, 212 S.W.3d 123, 125 (Mo. banc 2007) ("There are two general methods of adoption in Missouri: those in which consent to the adoption is required under section 453.030 and those in which consent is not required under section 453.040.").

S.W.2d 932, 934 (Mo. banc 1993); see also Sections 453.030 and 453.040. When the natural parent does not consent, "[t]he issue of termination must be considered first in contested chapter 453 adoptions to avoid confusing the quality of the adoptive home with the grounds for terminating parental rights." In re Adoption of C.M.B.R., 332 S.W.3d at 822; In re M.O., 70 S.W.3d 579, 588 (Mo. App. W.D. 2002) ("The proper approach in dealing with a contested termination under Chapter 453 would obviously be to avoid confusing the issues of termination and adoption. The termination issue must be considered first.").

Chapter 453 "does not speak to termination of parental rights[,]" but Chapter 453 does authorize the adoption without consent or with consent that has the effect of terminating parental rights. In re Adoption of C.M.B.R., 332 S.W.3d at 806. Thus, "Chapters 211 and 453 provide two separate means by which a parent's rights may be involuntarily terminated." S.L.M. v. D.L.N., 167 S.W.3d 736, 738 (Mo. App. W.D. 2005). Typically, however, the statutory mandates of Chapter 211 are irrelevant to a Chapter 453 proceeding unless specifically cross-referenced and mandated by Chapter 453 or if the prospective parents plead termination of parental rights under Chapter 211 in a Chapter 453 petition. In re Adoption of C.M.B.R., 332 S.W.3d at 806-07.

In a step-parent adoption, as in the case at bar, either willful abandonment or willful neglect of the child by the non-petitioning natural parent obviates and dispenses of the need for the parent's consent to the adoption, pursuant to Section 453.040(7). Matter of A.L.H., 906 S.W.2d at 375. Section 453.040(7) reads as follows:

> A parent who has for a period of at least six months, for a child one year of age or older, or at least sixty days, for a child under one year of age, immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him with necessary care and protection[.]

8

Here, Mother and Step-Father did not plead for the termination of Father's parental rights under the auspices of Chapter 211. Rather, the language of the Petition filed by Mother and Step-Father irrefutably corresponds with Section 453.040(7), without explicit reference thereto. See, e.g., D.L.N., 167 S.W.3d at 740 ("The adoption petition pleaded the language of section 453.040(7)."). However, the Judgment of the trial court and the GAL recommendation, in part, erroneously rely upon Chapter 211 in terminating Father's parental rights. The Judgment's reliance upon and reference to Chapter 211, nevertheless, offers no additional support or credence to the termination of Father's parental rights under Chapter 453.[5]

"Abandonment and neglect are different, but not mutually exclusive, concepts." G.S.M. v. T.H.B., 786 S.W.2d 898, 900 (Mo. App. E.D. 1990); see also In re J.M.J., 404 S.W.3d 423, 432 (Mo. App. W.D. 2013) ("The terms 'abandonment' and 'neglect' in this statute are used in the disjunctive; hence, either ground, if supported by substantial evidence, will obviate the need for parental consent to an adoption.") (internal citations omitted). For instance, intent is the central inquiry, regardless if termination is predicated upon abandonment or neglect. In re C.M.B., 55 S.W.3d 889, 894 (Mo. App. S.D. 2001). Furthermore, both terms are "elastic" and whether the behaviors of a parent satisfy either abandonment or neglect is "essentially a factual question." In re Adoption of K, 417 S.W.2d 702, 711 (Mo. App. 1967).

Intent is generally an inferred fact, gleaned from the actions of the parties and surrounding circumstances. In re H.N.S., 342 S.W.3d at 350. Although evidence of the parent's conduct both before and after the requisite six-month period may be considered, only the parent's conduct prior to the filing of the petition for termination may be considered to establish the six-

---

[5] The burden of completely and irrevocably severing one's parental rights is not modified in private, step-parent adoptions. In re Adoption of W.B.L., 681 S.W.2d 452, 454 (Mo. banc 1984).

month period.  Id.; see also Section 453.040(7).  "The greatest weight must be given to the conduct during the statutory period."  In re H.N.S., 342 S.W.3d at 350.

Proof of intent must be demonstrated by clear, cogent, and convincing evidence.  In re Adoption of H.M.C., 11 S.W.3d 81, 87 (Mo. App. W.D. 2000); see also T.H.B., 786 S.W.2d at 901 ("In a stepparent adoption, like the present one, the petitioners have the burden of proving the existence *vel non* of a condition obviating parental consent by clear, cogent and convincing evidence.").  "The clear, cogent and convincing standard of proof is met when the evidence instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true."  In re Adoption of H.M.C., 11 S.W.3d at 87; see also In Interest of M.J.A., 826 S.W.2d 890, 896 (Mo. App. S.D. 1992) (discussing "clear, cogent, and convincing" standard of proof in detail).

### Point I:  Willful Abandonment

Abandonment is described as the voluntary and intentional relinquishment of the custody of a child with the intent to "*never again*" claim the rights or duties of a parent.  In re K.L.C., 9 S.W.3d 768, 772-73 (Mo. App. S.D. 2000) (emphasis added).  Alternatively, abandonment is also defined as the intentional withholding by the parent of his or her care, love, protection, and presence, without just cause or excuse.  Id. at 773.

"The abandonment must be absolute, complete and willful[,]" and "[t]here must be a settled purpose to forego all parental duties and relinquish all parental claims."  In re Adoption of J--, 396 S.W.2d 257, 261 (Mo. App. 1965).  A parent, however, should not be able to pry apart the two elements of "claims" and "duties" as they "should be and are inseparable."  In re Adoption of S, 581 S.W.2d 113, 116 (Mo. App. W.D. 1979).  Rather, "the status of a parent is fundamentally based upon the assumption or at least a reasonable effort to assume parental

10

responsibility and the performance or at least a reasonable effort to perform parental duties." In re Adoption of K.L.G., 639 S.W.2d 619, 626 (Mo. App. S.D. 1982); see, e.g., In re Adoption of S, 581 S.W.2d at 116 ("A parent should not be able to treat a child as plaything to pick up for sporadic enjoyment at his whim, while at the same time disclaiming the burdens, sacrifices, and oft times pains of nurturing and caring for the child.").

The statutory period is defined by the six months prior to the filing the Petition—in this matter, that is June 23, 2014 through December 23, 2014. During the relevant statutory period, Mother's own testimony was clear that Father actively initiated efforts to accept and execute his parental duties and responsibilities. In the six months prior to the filing of the Petition, it is uncontested Father traveled from California to St. Louis, three or four different times, to visit with Daughter. During each weekend-long trip to St. Louis, it is also undisputed Father visited with Daughter between three and five hours each day. At Mother's insistence, Father's visits with Daughter were always closely supervised at a public location. Moreover, over the course of the same six-month period, it was not disputed Father called Daughter on the telephone at least three times a week. Mother also testified Father loves Daughter, and Daughter loves Father. Grounded on this uncontested evidence, alone, and in balancing Father's inherent, constitutional rights as a parent, this court finds Mother and Step-Father did not prove by clear, cogent, and convincing evidence Father intended to willfully abandon his Daughter for purposes of Chapter 453.

Mother, however, argues Father intended to willfully abandon Daughter as demonstrated by the fact Father deferred the filing of his paternity action until only a few days before trial. Mother contends Father failed to assert his parental rights in a timely fashion. Assuming Mother's argument has merit, Mother fails to recognize there are two sides to this coin. During

11

the life of Daughter, Mother never sought legal protection to limit Father's visitation or contact with Daughter—in fact, Mother allowed Father's visitation and phone calls. Only upon Mother's marriage to Step-Father did she seek to discontinue Father's involvement in Daughter's life.

Mother's evidence does clearly exhibit that upon Mother and Daughter's relocation to St. Louis, Father occasionally made unannounced trips to St. Louis, occasionally failed to appear for planned-trips to St. Louis, and occasionally emerged tardy for visitation. Cf. Tomlinson v. O'Briant, 634 S.W.2d 546, 551 (Mo. App. S.D. 1982) ("Considering the distance and expense of travel, the defendant's failure to exercise all her parental rights cannot be taken as evidence of an intent to abandon her children."). In fact, many of the frustrating occurrences detailed by Mother at trial are offensive and are traits unbecoming of a father. Mother's testimony clearly portrays Father as a disagreeable individual who requires supervised visitation. However, Father's character deficiencies are not sufficient evidence for a court to find by clear, cogent, and convincing evidence that he willfully abandoned Daughter. In re S.M.H., 160 S.W.3d 355, 372 (Mo. banc 2005) ("The law does not require parents to be perfect or be model parents. Poor conduct or character flaws are irrelevant unless they could actually result in future harm to the child."); see also, In re K.A.W., supra. Therefore, the evidence presented at trial does not "instantly tilt[] the scales in favor of termination[.]" In re Adoption of H.M.C., 11 S.W.3d at 87.

Mother and Step-Father did not meet their standard of proof of demonstrating by clear, cogent, and convincing evidence Father intended to surrender or abandon his parental duties. The evidence does not warrant a finding Father "abandoned" Daughter. Therefore, the trial court could not terminate Father's parental rights, based upon abandonment, as that would obfuscate the plain and unambiguous language and intent of Chapter 453, and in the process, infringe upon

12

"perhaps the oldest of the fundamental liberty interests" <u>Troxel</u>, 530 U.S. at 65. This court is left with a firm belief that the Judgment of the trial court is clearly erroneous.

Father's Point I is granted.

### *Point II:  Willful Neglect*

Neglect "focuses on physical deprivation or harm, and has been characterized as a failure to perform the duty with which the parent is charged by the law and by conscience." <u>In re J.M.J.</u>, 404 S.W.3d at 432 (citations omitted). Ultimately, neglect hinges upon the parent's intent to forego "parental duties." <u>In re C.M.B.</u>, 55 S.W.3d at 894. "Parental duties" includes both the obligation to provide financial support and maintain meaningful contact with the child. <u>In re J.M.J.</u>, 404 S.W.3d at 432.

The financial support of a child is a continuing parental obligation, and a parent has a duty to contribute as much as he or she can. <u>E.K.L. v. A.L.B.</u>, 488 S.W.3d 764, 769 (Mo. App. W.D. 2016). Any financial contribution, regardless of the quantity, demonstrates a parent's intent to continue the parent-child relationship. <u>Id.</u>; <u>see</u> <u>also</u> <u>In re Adoption of C.M.</u>, 414 S.W.3d 622, 657 (Mo. App. S.D. 2013) ("Evidence of this intent is lacking when the parent fails to make any contribution, no matter how small the amount.").

"In stepparent adoptions, [willful neglect] quite often is shown by a failure to provide support, without just cause or excuse, whether ordered by judicial decree or not." <u>T.H.B.</u>, 786 S.W.2d at 900. "A non-custodial parent's failure to contribute to the financial support of his or her children *combined with other evidence of lack of contact* is sufficient to sustain a finding of willful neglect in failing to provide proper care and maintenance." <u>In re Marriage of A.S.A.</u>, 931 S.W.2d at 222 (emphasis added).

13

In this matter, during the relevant statutory period, and absent a court order, it is uncontested Mother received $400 in *at least* four of the six months, via electronic bank transfers, which Mother periodically characterized as "child support" during her testimony.[6] Normally, such evidence would suffice to defeat the claim Father willfully neglected Daughter. See, e.g., Deardorff v. Bohannon, 761 S.W.2d 651, 655 (Mo. App. W.D. 1988) (father's minimal financial support and occasional weekend visits precluded a finding of willful neglect); Adoption of R.A.B. v. R.A.B., 562 S.W.2d 356, 361 (Mo. banc 1978) (father's financial support during the relevant statutory period averted a finding of willful neglect, albeit father failed to provide financial support before the statutory period).

At trial, however, the litigants painstakingly sparred over the source of these funds because Grandmother initiated the electronic bank transfers. Therefore, Mother presumably argued any financial support she received from Grandmother was a gift, and not at the behest of Father.

On the theory that Grandmother was personally satisfying Father's financial obligations for Daughter, the trial court concluded Father willfully neglected Daughter because he did not *personally* provide financial support. However, Mother fails to cite any authority to support her contention that financial support for a child must derive from the paying-parent's personal coffers.

We do not contest the trial court's findings that Grandmother was satisfying Father's child support obligations. However, premised upon Mother's own testimony regarding the nature of these payments, we hesitate to find the source of funds supplied for purpose of child support is of

---

[6] Furthermore, Mother testified that during the six-month statutory time period, Mother changed bank accounts and failed to provide the new account information to Grandmother or Father; hence, the two missing months of child support. Mother also testified Father or Grandmother provided financial support throughout the life of Daughter.

14

interest to the court, especially where there is such a close familial connection as here between Father and Grandmother. If Mother had sought court ordered child support, the only prerogative of the Family Support Division would be enforcing compliance by the payee-parent, not verifying the source of the funds.

Nevertheless, we note that "a parent's failure to provide financial support for a minor child does not in and of itself establish 'willful neglect[.]'" Matter of B.S.R., 965 S.W.2d 444, 450 (Mo. App. W.D. 1998). The law also requires other evidence that there has been a lack of contact by the parent with the minor child. Id.; see also C.B.L. v. K.E.L., 937 S.W.2d 734, 738 (Mo. App. E.D. 1996) ("We have found no case where failure to provide support alone has been held to warrant termination of parental rights."). As discussed, supra, no other such clear, cogent, and convincing evidence was presented at trial to demonstrate Father lacked contact with Daughter.

Therefore, in regards to willful neglect, this Court is, again, left with a firm impression the trial court's Judgment is clearly erroneous.

Father's Point II is granted.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed and remanded with instructions to deny the Petition for Adoption.

_____
Lisa P. Page, Judge


Robert M. Clayton III, P.J. and
Mary K. Hoff, J., concur.

15