In re the ADOPTION OF N.L.B.
M.T. and S.T., Respondents,

v.

Craig LENTZ, Appellant.

No. SC 87291.

Supreme Court of Missouri,
En Banc.

Jan. 9, 2007.

Rehearing Denied Feb. 13, 2007.

Robert E. Arnold, III, Nathalie C. Elliott, Richard L. Becker, Gladstone, for Appellant.

Cheri Cole Simkins, Independence, for Respondents.

Laurie V. Snell, Kansas City, for Amicus Curiae (Guardian ad Litem).

STEPHEN N. LIMBAUGH, JR., Judge.

This is a contested adoption in which the natural father, Craig Lentz, claims that the trial court wrongfully entered a judgment terminating his parental rights and approving the adoption. Father brought his appeal directly to this Court contesting the validity of one of the adoption statutes in question, section 453.030.3, RSMo Supp. 2005.[1] This Court has jurisdiction. Mo. Const. art. V, sec. 3. The judgment is reversed, and the case remanded.

### I.

The adoptive child was born on December 12, 2004, in Cape Girardeau, Missouri. Father traveled from his home in Columbia to be present at the hospital, he participated in the birth of the child, and he stayed with mother and child until their release. However, only the mother's name was entered on the birth certificate; the father's name was entered as "unknown." On release from the hospital, mother placed the child in foster care for the purpose of adoption in Cape Girardeau, and father returned to Columbia. Then, on January 20, 2005, father, who had driven back to Cape Girardeau, and mother signed a "Reconsideration of Adoption Plan by Birth Parents" (although appellant wrote "not the father" after his signature), and they withdrew the child from foster care. Father and mother each paid half of the $300 cost of foster care. On that same day, father drove mother and child to Kansas City and placed the child in the home of another couple who were acquaintances of father. Although this placement was also made for the purpose of adoption, mother was given access to the child, and in the meantime, father returned to Columbia, though he remained in continual contact with the mother.

On February 15, 2005, M.T. and S.T., another couple with whom the child had been placed, filed a petition for transfer of custody and adoption of the minor child. At a hearing on February 25, the mother consented to the adoption and the court transferred custody to the petitioners. The petition stated that the father was "unknown;" father was never served with process. However, the night before, on February 24, father and mother had visited with the child, and the trial court found that father had actual notice of the hearing held the next day. Nonetheless, he did not attend.

On March 2, less than a week after the hearing, father now well aware that adoption proceedings had commenced, filed with the putative father registry pursuant to section 210.823, and mother signed the documents as well confirming that Lentz was the father. At approximately that same time, father and mother both signed a separate "acknowledgment of paternity form" pursuant to section 193.215. On March 4, an amended birth certificate was issued listing Lentz as the father. Then, on March 24, father sought leave to intervene in the adoption proceeding. Leave was granted on March 28. Father filed an answer on April 28 objecting to the adoption and to the termination of his parental rights. In the answer, he alleged that he was the natural father as conclusively shown by DNA testing, but stated he had not had sexual intercourse with mother in a manner that would have led to conception. On June 17, father next filed a separate "Petition of Declaration of Paternity." In response to these actions, M.T. and S.T. filed a second amended petition on June 23 expressly alleging that "the minor child was born out of wedlock to [mother] and Craig Lentz" and that "the identity of the natural father is Craig Lentz."

1. All statutes cited are to RSMo 2000 unless otherwise indicated.

The trial was conducted on September 29 by a family court commissioner. The presentation of evidence was generally restricted to the issue of father's failure to file an action for paternity or file with the putative father registry within 15 days of the child's birth, which would obviate the need for his consent to the adoption under section 453.030.3. Although his actual paternity was not contested, father testified that his initial hesitancy in claiming paternity was due to his belief that his sexual relations with the mother could not have resulted in conception—that although he ejaculated, there was not sufficient penetration. He added that he now realized that there was sufficient penetration and conception did occur. Mother testified to the same effect, and added that she had had no sexual relation with any other person than father. At the conclusion of the trial, the commissioner entered findings and recommendations in favor of petitioners that were then incorporated in the judgment of adoption entered by the court.

## II.

There are two general methods of adoption in Missouri: those in which consent to the adoption is required under section 453.030 and those in which consent is not required under section 453.040. Section 453.030 states in pertinent part:

1. In all cases the approval of the court of the adoption shall be required and such approval shall be given or withheld as the welfare of the person sought to be adopted may, in the opinion of the court, demand.

2. The written consent of the person to be adopted shall be required in all cases where the person sought to be adopted is fourteen years of age or older, except where the court finds that such child has not sufficient mental capacity to give the same.

3. With the exceptions specifically enumerated in section 453.040, when the person sought to be adopted is under the age of eighteen years, the written consent of the following persons shall be required and filed in and made a part of the files and record of the proceeding:

(1) The mother of the child; and

(2) Any man who:

(a) Is presumed to be the father pursuant to the subdivisions (1), (2), (3) or (5) of subsection 1 of section 210.822, RSMo; or

(b) Has filed an action to establish his paternity in a court of competent jurisdiction no later than fifteen days after the birth of the child; or

(c) Filed with the putative father registry pursuant to section 192.016, RSMo, a notice of intent to claim paternity or an acknowledgment of paternity either prior to or within fifteen days after the child's birth, and has filed an action to establish his paternity in a court of competent jurisdiction no later than fifteen days after the birth of the child; or

(3) The child's current adoptive parents or other legally recognized mother and father.

. . .

Section 453.040 states:

The consent to the adoption of a child is not required of:

(1) A parent whose rights with reference to the child have been terminated pursuant to law, including section 211.444, RSMo, or section 211.447, RSMo, or other similar laws in other states;

(2) A parent of a child who has legally consented to a future adoption of the child;

(3) A parent whose identity is unknown and cannot be ascertained at the time of the filing of the petition;

(4) A man who has not been established to be the father and who is not presumed by law to be the father, and who, after the conception of the child, executes a verified statement denying paternity and disclaiming any interest in the child and acknowledging that this statement is irrevocable when executed and follows the consent as set forth in section 453.030;

(5) A parent or other person who has not executed a consent and who, after proper service of process, fails to file an answer or make an appearance in a proceeding for adoption or for termination of parental rights at the time such cause is heard;

(6) A parent who has a mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(7) A parent who has for a period of at least six months, for a child one year of age or older, or at least sixty days, for a child under one year of age, immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him with necessary care and protection;

(8) A parent whose rights to the child may be terminated for any of the grounds set forth in section 211.447, RSMo, and whose rights have been terminated after hearing and proof of such grounds as required by sections 211.442 to 211.487, RSMo. Such petition for termination may be filed as a count in an adoption petition.

On the face of these statutes, the grounds for an adoption are "the welfare of the person sought to be adopted," as provided in section 453.030.1, and either proof of "written consent" as provided in section 453.030.2 and .3 or proof that the parent(s) falls in one of the eight categories for which consent is not required as provided in section 453.040. The trial court granted the adoption on alternative grounds relying on both section 453.030 and section 453.040.

## A.

The initial controversy and the basis of father's constitutional challenge involve the effect of section 453.030.3(2), which requires written consent from any of three categories of fathers, or putative fathers:

(2) Only the man who:

(a) Is presumed to be the father pursuant to ... section 210.822 [where, in general, the father and the mother were married to each other at the time the child was born, or attempted to marry before the child's birth "although the marriage is or may be declared invalid," or married or attempted to marry after the child's birth]; or

(b) Has filed an action to establish his paternity ... no later than fifteen days after the birth of the child and has served a copy of the petition on the mother ...; or

(c) Filed with the putative father registry ... within fifteen days after the child's birth, and has filed an action to establish his paternity ... no later than fifteen days after the birth of the child.

It is uncontested that father does not fall within any of these categories. As a result, the adoptive parents claim, and the trial court so held, that by failing to bring himself within one of these categories, fa-

ther forfeited any right to withhold consent to the adoption so that his consent to the adoption was not required. They add that whatever due process was owed to father as an unwed father to protect his interest in the parent-child relationship was satisfied by affording him the opportunity to perfect those rights by filing to establish paternity under either section 453.030.3(2)(b) or (c). Given these conclusions, the trial court bifurcated the hearing to separately address the grounds for adoption under section 453.030 and section 453.040. During that part of the hearing devoted to section 453.030, the court generally allowed only evidence pertaining to whether father did, indeed, fall within one of the three categories of fathers or putative fathers from which consent to the adoption was required. In contrast, the court generally disallowed as irrelevant all evidence of father's fitness as a parent.

Father's constitutional challenge to these proceedings is that to the extent section 453.030 requires a father to act within a mere 15 days of the child's birth or lose the right to withhold consent to the adoption, the statute is insufficient to protect his interest in the parent-child relationship. This is a due process violation, he explains, for the reason that he is not afforded a hearing on his fitness as a parent before his parental rights are terminated as an incident to the adoption. In support, father cites *Quilloin v. Walcott*, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), for the proposition that an unwed father who did not comply with a state legitimization statute that would have required his consent to the adoption of his child nonetheless has a right to a hearing on parental fitness before his rights to his child are terminated.

■ This constitutional claim need not be addressed, however, because that part of the judgment based on section 453.030 must be reversed under father's alterna-

tive claim, which is that the statutory scheme for adoptions, at least under the unusual circumstances of this case, does not preclude a hearing on parental fitness. The adoption statutes, properly interpreted, avoid father's claim of constitutional infirmity because they tacitly allow an unwed father in father's position to contest the adoption by presenting evidence of his parental fitness despite the fact that he did not fall within one of the three categories of fathers under section 453.030.3(2) from whom consent to an adoption must be given. To be sure, the clear implication from the statute is that written consent to an adoption need not be obtained by any father who is not presumed to be the father (under section 210.822) or who has not filed an action to establish his paternity or who has not filed with the putative father registry within 15 days of the child's birth. But the fact that consent from those fathers need not be obtained does not necessarily mean that they are deemed to have consented to the adoption. Nothing in the statute precludes these putative fathers from otherwise timely challenging the adoption and the termination of their parental rights incident to the adoption, and the fact that they were not required to give consent to the adoption because they failed to file an action for paternity or to file with the putative father registry is but one factor to be considered as part of the challenge. Of course, in the great majority of cases there will be no impediment to the adoptions because there will be no challenge by those putative fathers who have not filed to establish paternity or who have not filed with the putative father registry. In those cases, the statute will operate to facilitate and expedite the adoptions by obviating the need to formally terminate their parental rights under section 453.040(1) or (8) or to otherwise prove up their status under the other subsections

of section 453.040 as a parent from whom consent to the adoption is not required.

■ Here, father timely intervened in the adoption proceeding. He had standing to do so by virtue of the fact that he and the mother had signed an "acknowledgment of paternity" form pursuant to section 193.215 which, under section 210.823, "shall be considered a legal finding of paternity. . . ." In fact, his paternity was essentially uncontested because the adoptive parents affirmatively alleged in their second amended petition that father is indeed the natural father. Furthermore, he had never consented to the adoption or to the termination of his parental rights. As noted, however, during the first part of the bifurcated trial, the court restricted the evidence to the question of whether father fell within one of the three categories of fathers and putative fathers from whom consent to the adoption was required. This was error. Again, these rulings were made under the mistaken belief that those putative fathers who did not fall within one of the three categories were precluded from otherwise challenging the adoption. The trial court should instead have permitted all evidence pertaining to the ultimate and overriding ground for adoption required in section 453.030—"the welfare of the person sought to be adopted." And in that regard, the notion of the welfare of the person sought to be adopted—the child—is informed by the fundamental proposition and presumption that maintaining the natural parent-child relationship is in the best interests of the child. *In the Interest of C.L.M.*, 625 S.W.2d 613, 617 (Mo. banc 1981). The notion is further informed by this Court's holding, based on article I, sections 2 and 10, of the Missouri Constitution, that "the same presumption of fitness afforded married fathers in parental termination proceedings be afforded to natural fathers after a reasonable showing of fatherly concern in such cases." *State ex rel. J.D.S. and J.D.M. v. Ed-*

*wards*, 574 S.W.2d 405, 409 (Mo. banc 1978). Thus, the adoption hearing must accommodate all of these concerns.

### B.

Turning to the second part of the bifurcated hearing relating to the alternative ground for adoption under section 453.040, the trial court held:

> Additionally, pursuant to RSMo Section 453.040(7), the consent of the birth father is not required to this adoption as the birth father has willfully abandoned the Child for a period of at least six months immediately prior to the filing of the Petitioner's Second Amended Petition for Termination of Paternal Rights and Adoption.

This conclusion, however, does not track with the requirements of subdivision (7) which sets out three separate ways to prove abandonment. That subdivision provides that consent to the adoption of a child is not required of:

> A parent who has for a period of at least six months, for a child one year of age or older, or at least sixty days, for a child under one year of age, immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him with necessary care and protection.

■ It is quite unclear from the face of the court's finding to which of the three grounds for abandonment the court is attempting to refer. In any event, the court's express finding that father willfully abandoned the child for a period of at least six months immediately prior to the filing of the second amended petition is not supported by the evidence. The second amended petition was filed on June 23, but

father had filed his motion to intervene in the case three months before on March 25, and since that time has actively contested the adoption at every step of the proceedings. Moreover, the court placed the child for adoption on February 25 (again less than six months before the filing of the second amended petition), and since that time father was precluded from any contact with the child. Under these circumstances, father cannot be said to have abandoned the child. *See In re C.M.B.*, 55 S.W.3d 889, 895 (Mo.App.2001); *In Interest of D—L—C—*, 834 S.W.2d 760, 770 (Mo.App.1992) (stating that abandonment is generally not compatible with a case where custody has been taken from a parent involuntarily by court order).

Even if the trial court's finding had referred to abandonment for a 60-day period prior to the filing of the petition for adoption, rather than abandonment for a six-month period prior to the filing of the second amended petition, the evidence was still insufficient. The original petition was filed on February 15, only 65 days after the birth of the child. The uncontroverted evidence was that father was present for the birth of the child, that mother placed the child in foster care, that father and mother recovered the child from foster care on January 20 and each paid half of the $300 for the cost of the foster care, and that on the same date father transported the mother and child to Kansas City for a different foster care placement. The statutory requirement to prove abandonment "for a period of at least sixty days," implies abandonment for a continuous period of sixty days, and father's conduct in caring for the child on January 20 alone refutes the allegation. Even assuming that the placement of the child with father's acquaintances in Kansas City constituted an abandonment, the period of abandonment "immediately prior to the filing of the petition" ran only from January 20 to

February 15, a mere 26 days, rather than the requisite 60 days.

### III.

For the foregoing reasons, the judgment of the trial court is reversed, and the case is remanded.

All concur.