**In the Interest of A.M.S. and K.P.S.; Plaintiffs,**

**Missouri Department of Social Services, Children's Division, Respondent,**

v.

**S.V. (Natural Mother), Defendant,**

**C.S. (Natural Father), Appellant.**

**No. WD 69005.**

Missouri Court of Appeals, Western District.

Oct. 14, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 2008.

Application for Transfer Denied Jan. 27, 2009.

William D. Farrar, Missouri City, MO, for Appellant.

Tom J. Bowman, Richmond, MO, for Plaintiffs.

Gary L. Gardner, Jefferson City, MO, for Respondent.

G. Thomas Harris, III, Lee's Summit, MO, for Defendant.

Before JAMES M. SMART, JR., P.J., LISA WHITE HARDWICK, J., and JAMES E. WELSH, JJ.

JAMES EDWARD WELSH, Judge.

C.S. (Father) appeals the judgment entered by the circuit court terminating his parental rights to his biological child, A.M.S. (Child).[1] Father's court-appointed attorney seeks an award of attorney fees for his work on this appeal. We affirm the circuit court's judgment terminating Father's parental rights and remand for the circuit court to consider the motion for attorney fees.

Father asserts sixteen separate points on appeal. In points one through six, Father asserts error pertaining to the circuit court's findings of grounds for termination of parental rights pursuant to section 211.447.4(2).[2] In points seven through eleven, he asserts error in the circuit court's findings of grounds for termination of parental rights pursuant to section 211.447.4(3) and (6). In his remaining points, twelve through sixteen, Father asserts error in the circuit court's findings

under section 211.447.6, regarding the best interest of the child determination. We affirm the circuit court's judgment terminating Father's parental rights to Child.

We view the record and testimony in the light most favorable to the circuit court's ruling. *In the Interest of C.L.W.*, 115 S.W.3d 354, 356 (Mo.App.2003). The evidence revealed that on July 11, 2002, Child was born while Father was in prison for second degree burglary. Although Mother entered the name of another boyfriend as the father on Child's birth certificate, a DNA test on June 1, 2004, confirmed that Father was her natural father. Father was paroled on August 5, 2003. On August 15, 2004, Father returned to prison for violating his parole.

On January 11, 2005, while Father was still incarcerated, the Ray County Circuit Court took jurisdiction of Child due to alleged abuse by Mother. On June 23, 2005, Mother pled guilty to abusing Child and was sentenced to twelve years in the Missouri Department of Corrections.

In December 2004, after the allegations of abuse by Mother, the Department of Social Services, Children's Division, set up family support team meetings, and Father did not participate until July 2006 due to his incarceration. Father did attend a couple of meetings via telephone when he was no longer in maximum security. Father claimed to have been working toward

---

**1.** The termination of S.V.'s (Mother) parental rights to K.P.S. was consolidated with the termination of parental rights proceeding for A.M.S. Mother executed a voluntary consent to terminate her parental rights to A.M.S. and K.P.S., and the circuit court found that Mother "willingly, voluntarily and knowingly consented to the termination of her parental rights in, to and over [A.M.S.] and [K.P.S.]." Mother does not appeal from the circuit court's judgment. Moreover, the termination

of parental rights of the natural father of K.P.S. was not a part of these proceedings as the counts against him were dismissed prior to trial.

**2.** Section 211.447 was amended effective August 28, 2007, which added a subsection but did not otherwise change the statute. We refer to the RSMo 2000 version, which was in effect when the petition was filed.

his GED and was on a wait list for a parenting class, but he failed to complete either. Father also reported that his release date was December of 2007; however, he failed to disclose that he faced pending charges in Ray County.

On January 16, 2007, Children's Division filed its petition to terminate Father's parental rights. The hearing was held on September 17–18, 2007. On October 5, 2007, the circuit court entered its judgment terminating the parental rights of Father to Child. Father appeals.

■ Termination of parental rights is allowed when a statutory ground for termination is supported by clear, cogent, and convincing evidence, and termination is determined to be in the best interests of the child by a preponderance of the evidence. *In the Interest of K.A.W.*, 133 S.W.3d 1, 12 (Mo. banc 2004); *In the Interest of L.M.*, 212 S.W.3d 177, 181 (Mo.App.2007). "[C]lear, cogent, and convincing evidence instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *K.A.W.*, 133 S.W.3d at 12. In our review, we "defer to the circuit court's ability to judge the credibility of witnesses and will affirm the judgment unless there is no substantial evidence to support it, it is contrary to the evidence, or it erroneously declares or applies the law." *Id.* at 11. Any conflicting evidence will be viewed in the light most favorable to the judgment of the circuit court. *Id.* at 12.

■ Even though Father alleges sixteen points of circuit court error, only one statutory ground under section 211.447 is required to support termination of parental rights if properly pleaded and proved. *In the Interest of E.D.M.*, 126 S.W.3d 488, 492 (Mo.App.2004). Children's Division concedes that there may be an issue with finding a statutory ground pursuant to section 211.447.4(2) because it was not pled in the petition. However, we need not address this issue because we find a statutory ground exists to terminate Father's parental rights pursuant to section 211.447.4(3).

■ Section 211.447.4(3) provides for termination if:

> The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.

*In the Interest of B.J.K.*, 197 S.W.3d 237, 243 (Mo.App.2006). In determining whether to terminate parental rights under section 211.447.4(3), the court is to consider and make findings as to the four conditions specified in subparagraphs (a) through (d). § 211.447.4(3)(a)-(d). Proof of one of these factors is sufficient to support termination of parental rights. *In the Interest of N.M.J.*, 24 S.W.3d 771, 778 (Mo.App.2000). Because we find that the evidence was sufficient to support termination of the Father's parental rights pursuant to section 211.447.4(3), based on a finding that Father failed to comply with the social service plan under section 211.447.4(3)(a), we need not address the sufficiency of the evidence as to the other conditions. *Id.*

■ The circuit court found that Child at the time of the termination hearing had been in foster care in excess of fifteen of the most recent twenty-two months. The circuit court further found that, pursuant

to section 211.447.4(3), grounds existed to terminate Father's parental rights. Specifically, the circuit court made the following findings:

a. The conditions that led to the assumption of jurisdiction still persist, and conditions of a potentially harmful nature continue to exist and there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, to wit

b. The father has failed to attend visits due to his continued incarceration.

c. Even though the father is due to be released in December 21, 2007, he will then be transported to Ray County, Missouri for outstanding charges and therefore, continues to have his legal issues unresolved.

d. The father is unfit to be a party to the parent and child relationship because of his continuing failure to visit or communicate with the child regularly to maintain the parent-child bond.

e. That there exist grounds to terminate the father's parental rights in that continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home, specifically, the *father has never participated in visitation and has not participated in any services except for beginning completion of his GED*. (Emphasis added.)

Clear, cogent, and convincing evidence that was presented at trial amply supports the circuit court's findings. At the termination of parental rights hearing, Children's Service Supervisor Becky Clariday testified that Child had been in foster care for nearly three years.

And with regard to whether the same conditions persist, Father testified that he was currently still in custody.[3] He stated that he had been in prison and was paroled in August 2003. However, in August 2004, his parole was revoked, and he returned to prison. Father was scheduled for release on December 21, 2007; however, he was scheduled to be transported to Ray County to face pending charges for unlawful use of drug paraphernalia and resisting arrest. Father admitted that he had never told anyone with the Children's Division about his pending charges. As a result, at the termination hearing, it was unclear when he would be released. Further, Child's psychologist, Kelli Miesse, testified that even once Father is released, before he could be reunified with Child, he would have to demonstrate that he could be a stable parent by establishing a home, maintaining a job, and attending parenting classes. She stated that this was a long term project. Children's Division Case Worker Charity Buie testified that the normal time frame to observe these tasks and determine whether reunification would be in Child's best interest is twelve to fifteen months.

Additionally, Buie testified that Father did not complete any of the requested services and that she did not believe he would successfully complete the classes if given the chance when he was released. Father received his service plan from the Children's Division, which he signed on July 28, 2006. This plan included objectives for when Father was released and objectives to be completed while he remained in prison. It included counseling, GED, and parenting classes. Father failed to pursue those objectives. While he did begin studying for his GED, he did not begin for a year after he signed this

**3.** It should be mentioned that at no time did the Children's Division maintain that Father's incarceration was in itself a ground for termination.

service plan and until after the petition for termination had been filed. Father enrolled in parenting classes but was unable to attend them due to his placement in administrative segregation.

The circuit court found that Father failed to attend visits due to his incarceration. When Father was in prison, he corresponded with the Children's Division, but, initially, a treatment plan was not possible because he was in a maximum security facility. This also prevented Father from participating in monthly family support team meetings. In July 2006, after Father had been moved to a different facility, he participated in the team meetings by telephone. However, Father missed a couple of those meetings due to his being placed in administrative segregation for punishment.

There was testimony that aside from lack of visits, Father failed to maintain other contact or communication with Child, thereby failing to maintain a parent-child bond with her. The records from the Child Support Center show that Father never made a support payment. He never sent Child clothing or gift cards. From August 2004 to September 2007, Father sent approximately five to seven cards or letters. He also made her a book on tape, which was withheld by Miesse pending the outcome of the termination hearing. Miesse testified that Child considers her foster father to be her father. Child's case worker, Buie, testified that Child has no relationship with her biological father.

The evidence reflected that Father was repeatedly placed in administrative segregation for his conduct violations. These violations were for various reasons, including violating rules, possession of contraband, disobeying orders, insulting behavior, and destroying property. These violations resulted in Father spending approximately 587 days in administrative segregation at the time of the termination hearing. His placement in administrative segregation interfered with his GED classes, parenting classes, and team meetings.

As outlined above, there was clear, cogent, and convincing evidence that was presented at trial that amply supports the circuit court's findings. Father also argues that there were no grounds pursuant to section 211.447.4(6); however, as stated before, only one ground is necessary, so we need not address this point. Points one through eleven are denied.

In points twelve through sixteen, Father argues that, even if a ground was determined to be present, termination of his parental rights was not in Child's best interest. We disagree.

■ We review the determination of whether termination is in the best interest of the child for abuse of discretion. *In the Interest of I.Q.S.*, 200 S.W.3d 599, 603 (Mo.App.2006). We defer to the circuit court's findings of fact and consider all of the evidence and reasonable inferences in the light most favorable to the judgment. *Id.*

Pursuant to section 211.447.6, when considering whether to terminate the parent-child relationship under grounds in section 211.447.4(3), the circuit court must evaluate and make findings on the following factors, where applicable, when considering whether to terminate the parent-child relationship:

(1) The emotional ties to the birth parent;

(2) The extent to which the parent has maintained regular visitation or other contact with the child;

(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

(5) The parent's disinterest in or lack of commitment to the child;

(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;

(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

§ 211.447.6.

The circuit court made the following findings:

(a) The child has no emotional ties with the father.

(b) The father's last visitation with the child was in 2004 when child was still an infant.

(c) The father has paid no support for the entirety of the child's life.

(d) There are no services that would not [sic] bring about a likely adjustment to enable the child to be returned to the father in an ascertainable period of time as to [sic] the father will be incarcerated until December of 2007 and upon release still has pending charges in Ray County, Missouri.

(e) The child is in need of and deserves a stable and permanent home which cannot be and has not been provided by father.

In points twelve through sixteen, Father argues that the circuit court erred in each of the findings on the factors of best interest of the child. We note that Father is erroneous in his assertion that the circuit court's findings must be supported by clear, cogent, and convincing evidence. As noted above, the best interest determination must only be supported by a preponderance of the evidence. *L.M.*, 212 S.W.3d at 181.

The facts discussed in our analysis of a termination ground pursuant to section 211.447.4(3) demonstrate that the record amply supports the circuit court's findings as to its best interest determination. In particular, there was testimony that Child had been in foster care for almost three years, that Child had no relationship with Father, that there had been minimal contact between Father and Child, that Father never paid any child support, that Father failed to complete the requested services, and that it is unknown when Father will be released from custody due to his present incarceration and his pending charges. The circuit court did not abuse its discretion in finding that termination was in the best interests of Child. Points twelve through sixteen are denied. We, therefore, affirm the circuit court's judgment terminating Father's parental rights to Child.

Father's court-appointed attorney seeks an award of attorney fees for his work on the appeal. An award of attorney fees for court-appointed representatives are allowed as "court costs" in cases to terminate parental rights. *In the Interest of A.D.G.*, 23 S.W.3d 717, 721 (Mo.App. 2000). "The circuit court has the expertise and discretion to order fees and to set the amount awarded, even when the award is for services on appeal." *Id.* We remand to the circuit court so that it can consider the motion for fees for work on this appeal.

All concur.