In the Interest of: J.J.B; D.A.B. and K.S.B., Respondents,

v.

J.A.V.C., Appellant.

No. WD 71911.

Missouri Court of Appeals, Western District.

June 29, 2010.

Jill M. Katz, Kansas City, MO, for appellant.

Michael J. Mann, Kansas City, MO, Independence, MO, for respondents.

Before Division Three: JAMES M. SMART, JR., Presiding Judge, JOSEPH M. ELLIS, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

J.A.V.C. (Mother) appeals the circuit court's judgment terminating her parental rights over her son J.J.B., and permitting D.A.B. and K.S.B. (Adoptive Parents) to adopt J.J.B. without Mother's consent. The circuit court found that grounds for termination of Mother's parental rights existed under 211.447.5(3).[1]　Because we

---

1. All statutory citations are to RSMo 2000 as updated through the 2009 Cumulative Supplement, unless otherwise indicated.

have determined that substantial evidence supports the circuit court's finding that termination was justified on the basis of Mother's mental conditions under § 211.447.5(3)(c), we affirm.

## Factual Background

J.J.B., born on January 28, 2004, was removed from Mother's home and was placed in foster care under the jurisdiction of the Jackson County Family Court on December 14, 2006, based on findings by the court that J.J.B. was without proper care, custody, and support pursuant to Section 211.031. Specifically, the Juvenile Officer's Petition alleged and the Court found that "[M]other exhibits a pattern of neglecting and failing to properly supervise the child ... who is 2 years of age [and this pattern] has resulted in at least three instances in which the child has left the home and wandered the streets, alone and without adult supervision." Moreover, the court found that the "actions of the mother place the child at risk of further harm or neglect absent the intervention of this Court." J.J.B. has remained in foster care since that time.

Beginning in December of 2006 and during the course of nearly three years, Mother was offered a host of social services designed to allow Mother to regain custody and control of J.J.B. Further details pertaining to Mother's participation in these services, or lack thereof, will be outlined as relevant in the analysis section herein.

In May of 2007, J.J.B. was placed in the foster care of Adoptive Parents. On April 21, 2008, Adoptive Parents filed the instant Petition for Adoption, which alleged grounds not only to adopt J.J.B. but also alleged grounds to terminate Mother's parental rights over J.J.B.

On November 13, 2009, an evidentiary hearing was held before the Family Court Commissioner, with both Adoptive Parents and Mother presenting evidence. On November 17, 2009, the Commissioner issued its Findings and Recommendations for Decree of Adoption, which were adopted and confirmed as a final Judgment of the Circuit Court on November 23, 2009.[2]

Mother now appeals.

## Standard of Review

■ "The trial court's termination of parental rights must be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or misapplies the law." *In the Interest of C.J.G.*, 75 S.W.3d 794, 797 (Mo.App. W.D.2002). "We review the facts and all reasonable inferences therefrom in the light most favorable to the trial court's judgment." *Id.*

## Analysis

■ In Point One, Mother argues that the trial court erred in terminating her parental rights over J.J.B. "without her consent pursuant to Section 453.040(7) because [she] had not willfully substantially and continuously neglected to provide the child with necessary care and protection in the six months prior to the filing of the Petition in that [Mother] regularly attempted and did have regular contact with the minor child, consistently provided food and toys for the child and substantial evidence showed [Mother] provided substantial and continuous care and protection between the filing of the pleading and the trial date."

At the outset, we must note that Mother is mistaken when she asserts that her

---

**2.** In light of the fact that the trial court adopted the Commissioner's findings and recommendations, we will refer to them hereafter as the trial court's judgment.

parental rights were terminated "pursuant to Section 453.040" because here her parental rights were expressly terminated by the circuit court pursuant to Section 211.447. Nonetheless, because Mother's termination of parental rights argument in this Point is predicated solely on Section 453.040, we turn to that statute, which authorizes the adoption of a child without the consent of the natural parents. Specifically, Section 453.040 sets forth eight alternative and independent grounds to establish when the parent's consent to an adoption is not required. *Id.; see also In re Adoption of N.L.B. v. Lentz*, 212 S.W.3d 123, 126 (Mo. banc 2007) ("On the face of these statutes, the grounds for an adoption are the 'welfare of the person sought to be adopted,' as provided in section 453.030.1, and either proof of 'written consent' as provided in section 453.030.2 and .3 or proof that the parent(s) falls in one of the eight categories for which consent is not required as provided in section 453.040.").[3]

The two grounds of Section 453.040 applicable to the instant litigation are the following:

(7) A parent who has for a period of at least six months, for a child one year of age or older, or at least sixty days, for a child under one year of age, immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him with necessary care and protection;

(8) A parent whose rights to the child may be terminated for any of the grounds set forth in section 211.447, RSMo, and whose rights have been ter-

minated after hearing and proof of such grounds as required by sections 211.442 to 211.487, RSMo. Such petition for termination may be filed as a count in an adoption petition.

Section 453.040.

Here, Mother's argument focuses solely on subsection 7 of the statute. Mother's argument ignores that subsection 8 of the statute provides another statutory basis that, if proven, would be sufficient to demonstrate that her consent to the adoption need not be obtained. Specifically, Section 453.040.8 provides that if Mother's parental rights are terminated pursuant to "*any* of the grounds set forth in section 211.447," then Mother's consent to the adoption need not be obtained. *Id.* (Emphasis added.) Section 211.447.9, in turn, provides that "[i]n actions for adoption pursuant to chapter 453, RSMo, the court may hear and determine the issues raised in a petition for adoption containing a prayer for termination of parental rights filed with the same effect as a petition permitted pursuant to subsection 2, 4, or 5 of this section."

In this case, the trial court terminated Mother's parental rights over J.J.B. pursuant to Section 211.447.5(3), which states the following:

The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-

---

3. Because Father is not a party to this appeal, we will not address the termination of his parental rights.

child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control[.]

*Id.*

Here, the trial court made the following findings and conclusions "pursuant to section 211.447.5.(3)(a–d)" in terminating Mother's parental rights:

(a) The Respondent, [Mother],[4] has made no progress in complying with the services directives of Missouri Children's Division and this Court in the past 36 months. A service plan was

entered into by the Respondent and Missouri Children's Division on or about December 6, 2006 and several times thereafter, including November 20, 2007, but the Respondent did not comply, and

(b) Numerous services have been offered to the Respondent to aid her in adjusting her circumstances and conduct so as to enable her to care for the child. These services included Drug Court & DRAGNET, intense case management and supervision by Missouri Children's Division, two psychological evaluations with recommendations, parenting assessment with recommendations, individual therapy with Westport Counseling, parenting class and housing referrals, supervised visits and parent aid services with Family First Services.

(c) [Mother] has a mental condition that has been shown by the competent testimony of Dr. Mary Richardson to be permanent in that her brain injuries and cognitive thinking are impaired long term, and also, is of such a nature that there is no reasonable likelihood that her conditions can be reversed and the Court finds that said conditions make [Mother] unable to knowingly provide for the care of the child.

(d) The Court has found that [Mother] had drug and alcohol issues in the past and the same have not been corrected. However, due to her mental condition the Court finds this section (d) otherwise inapplicable.

■ "It is sufficient for termination of parental rights, under § 211.447.5, if one of the statutory grounds set forth in that section for termination is adequately pleaded and proved." *In the Interest of B.J.K.*, 197 S.W.3d 237, 243 (Mo.App. W.D. 2006). "Hence, we must affirm a judg-

---

**4.** In its Judgment the trial court used the mother's name. In order to protect the identity of the minor child we have substituted the designation of "Mother" throughout this opinion.

ment terminating parental rights, pursuant to § 211.447, if the record supports termination on any one of the statutory grounds set forth in § 211.447.5." *Id.*[5]

Mother does not challenge the above findings of the trial court in Point One. Point One is denied.

■ In Point Two, Mother argues that the trial court erred in terminating her parental rights over J.J.B. pursuant to Section 211.447.5(3) because there was insufficient evidence to support the trial court's findings and conclusions that Mother failed "to remediate the issues that brought the child to the Court's attention [and] no evidence was presented regarding the existence of 'conditions of a potentially harmful nature'" for J.J.B. We disagree.

As outlined above in Point One, the trial court terminated Mother's parental rights over J.J.B. pursuant to Section 211.477.5(3), and in doing so the Court made detailed findings of fact and conclusions of law in order to support its judgment order. In arguing that there was insufficient evidence to support the trial court's judgment that terminated her parental rights, Mother chooses to focus only on those few facts that support her argument on appeal and ignores the vast bulk of evidence that supported the trial court's judgment order. Simply put, Mother's argument herein fails to acknowledge that the "trial court's termination of parental rights must be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it

erroneously declares or misapplies the law." *C.J.G.*, 75 S.W.3d at 797.

■ "Termination of parental rights is allowed when a statutory ground for termination is supported by clear, cogent, and convincing evidence, and termination is determined to be in the best interests of the child by a preponderance of the evidence." *In the Interest of A.M.S.*, 272 S.W.3d 305, 308 (Mo.App. W.D.2008).

The trial court made the requisite findings under Section 211.447.5(3) "as to the four conditions specified in subparagraphs (a) through (d)." *A.M.S.*, 272 S.W.3d at 308 (citing § 211.447.4(3)(a)–(d)).[6] "Proof of *one* of these factors is sufficient to support termination of parental rights." *Id.* (emphasis added); *see also In the Interest of N.M.J.*, 24 S.W.3d 771, 778 (Mo.App. W.D.2000).

Here, Mother's failure to meaningfully dispute the findings and conclusions by the trial court as it pertains to her permanent "mental condition" is dispositive of this Point. Section "211.447.4(3)(c) provide[s] that a mental or emotional condition must be analyzed in three prongs to make an adequate finding: (1) documentation-whether the condition is supported by competent evidence; (2) duration-whether the condition is permanent or such that there is no reasonable likelihood that it can be reversed; and (3) severity of effect-whether the condition is so severe as to render the parent unable to knowingly provide the child necessary care, custody and control." *In the Interest of K.W.*, 167 S.W.3d 206, 211 (Mo.App. E.D.2005) (quot-

---

5. Mother does not contest the sufficiency of the evidence as to the "best interest" prong of the termination of parental rights.

6. We noted in *In the Interest of A.M.S.* that "Section 211.447 was amended effective August 28, 2007, which added a subsection but did not otherwise change the statute," and we cited to the RSMo 2000 version because it

"was in effect when the petition was filed" in that case. 272 S.W.3d at 307 n. 2. Because we refer to the amended version in the instant case, one will notice that although we refer to the same statutory language, the current citation is to Section 211.447.5(3) and opposed to Section 211.447.4(3).

ing *In the Interest of K.A.W.*, 133 S.W.3d 1, 13 (Mo. banc 2004)).

The trial court found the following pursuant to Section 211.447.5(3)(c):

> [Mother] has a mental condition that has been shown by the competent testimony of Dr. Mary Richardson to be permanent in that her brain injuries and cognitive thinking are impaired long term, and also, is of such a nature that there is no reasonable likelihood that her conditions can be reversed and the Court finds that said conditions make [Mother] unable to knowingly provide for the care of the child.

Mother's sole argument on appeal that these specific findings and conclusions were not supported by substantial evidence is that Dr. Richardson, when asked if, based upon her evaluation of Mother, "that there'd be no way that [Mother] could make changes in the future', Dr. Richardson testified that she 'couldn't say with a hundred percent certainty.'" But the relevant inquiry in determining whether to terminate parental rights is if there is "clear, cogent and convincing evidence," not if there is evidence that removes any and every doubt. *A.M.S.*, 272 S.W.3d at 308. Dr. Richardson's testimony supported the trial court's conclusion that "there is no reasonable likelihood that her conditions can be reversed" because Dr. Richardson testified that "with a certain degree of certitude, that it's a permanent situation."

Dr. Richardson, a licensed psychologist, gave detailed testimony to support the trial court's conclusion that Mother's mental conditions were irreversible and, therefore, made her unable to knowingly provide for the care of the child. Mother was diagnosed by Dr. Richardson of having a litany of mental conditions including "mental illness due to a brain trauma," "posttraumatic stress disorder," "depression," "borderline intellectual functioning," and "organic personality disorder."

Based on these various conditions, Dr. Richardson opined that she was doubtful if Mother would be able to care for herself and ruled out the possibility that Mother would be able to care for J.J.B. on her own. Dr. Richardson based this conclusion on a host of factors, including Mother's "serious cognitive impairment" that would prevent her from reasoning through crises, understanding the needs of a young child, and could even ultimately lead to "role reversals" with the child. Moreover, Dr. Richardson noted that Mother had demonstrated an inability to protect herself from abusive relationships and that her serious mental conditions would prevent her from protecting the child.

Dr. Richardson testified at length about Mother's bizarre and unusual behavior during her interview of Mother. For example, when she was asked the name of her children, Mother called her children by the name of hotels including "Alameda," "Hyatt Regency," "Sheridan" and "Harrah's Casino." Furthermore, Dr. Richardson testified that a psychiatrist prescribed Seroquel, Celexa, Zoloft, and Diazepam to Mother for her mental conditions.[7] Mother also told Dr. Richardson that she had "panic attacks," "is worried about germs," and "feels very violated when friends take

---

7. On appeal, Mother complains that the Children's Division failed to obtain any information from the psychiatrist regarding her progress. But Mother fails to explain how obtaining this information would have been illuminating to the trial court in determining whether to terminate Mother's parental rights. Mother was free to call the psychiatrist as a witness at the hearing, and Mother's failure to do so created a reasonable inference that her psychiatrist's testimony would not have supported the conclusion that she was able to provide and care for J.J.B. in light of her mental conditions.

pictures of her with camcorders and cell phones." Mother also told a "bizarre story about visiting a lady who wanted to kidnap her." [8]

Because the trial court's finding of a permanent "mental condition" under Section 211.447.5(3)(c) was supported by substantial evidence for all of the aforementioned reasons, we need not address the sufficiency of the evidence as to the other conditions pursuant to the statute. *N.M.J.*, 24 S.W.3d at 778.

■ Even though offered multiple services to assist her in regaining custody of her son, Mother does not dispute that there was ample evidence that she "failed" in complying with the social service plan by going "AWOL" for months at a time, engaging in illegal drug use, and failing to maintain secure housing or employment. Yet Mother persists on contending that merely because she visited J.J.B. and "provided food and toys" for him after the Petition was filed, that this somehow demonstrates that the trial court had insufficient evidence to terminate her parental rights. "Evidence of short-term improvements in a parent's circumstances occurring after the filing of the termination petition is not necessarily compelling, as the parent's conduct subsequent to a petition for termination is not the sole consideration in the trial court's determination." *In the Interest of S.L.*, 140 S.W.3d 208, 212 (Mo.App. S.D.2004).

Point Two is denied.

In Point Three, Mother argues that the trial court "erred in terminating the parental rights of [Mother] pursuant to Section 211.447.5(6) because [Mother] did not commit a consistent pattern of specific abuse."

This Point is without merit because the trial court made clear in its judgment that it was terminating Mother's parental rights pursuant to Section 211.447.5(3), not Section 211.447.5(6). Because the trial court did not invoke the legal principles of Section 211.447.5(6), it goes without saying that the Court could not have erred, as Mother alleges in Point Three, in not applying these legal principles.

Furthermore, the fact that the trial court did not err in terminating Mother's parental rights pursuant to 211.447.5(3), for the reasons explained at length in Point Two, is also dispositive of this issue on appeal. "It is sufficient for termination of parental rights, under § 211.447.5, if one of the statutory grounds set forth in that section for termination is adequately pleaded and proved." *B.J.K.*, 197 S.W.3d at 243. "Hence, we must affirm a judgment terminating parental rights, pursuant to § 211.447, if the record supports termination on any one of the statutory grounds set forth in § 211.447.5." *Id.*

Point Three is denied.

### Conclusion

The judgment of the circuit court, which terminated Mother's parental rights over J.J.B., is hereby affirmed.

All concur.

---

8. The above examples are not an exhaustive list of Dr. Richardson's relevant findings as it pertained to Mother's mental conditions because to compile such a list would be impractical for the purposes of ruling on the merits of this appeal. Mother complains on appeal that the trial court failed to consider Mother's condition at the time of the trial in November 2009 and made its findings based upon her condition at the time of the original assumption of jurisdiction or upon other orders of disposition in the action. We disagree. Dr. Richardson's evaluation of Mother occurred on March 20, 2009, which was only a matter of months prior to the trial on November 13, 2009.